**DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

| | |
|---|---|
| GOVERNMENT OF THE )<br>UNITED STATES VIRGIN ISLANDS, )<br>   )<br>   Plaintiff,   )<br>   )<br>   v.   )<br>   )<br>OCWEN USVI SERVICES, LLC, )<br>as successor in interest to )<br>OCWEN MORTGAGE SERVICING, INC., )<br>   )<br>   Defendant.   )<br>_____ ) | Civil Action No. 2025-0025 |

**Appearances:**
**Jalicha Persad, Esq.**
St. Thomas, U.S.V.I.
    *For the United States*

**Emily Frances Pagrabs, Esq.**
**Jared Edward Dwyer, Esq.**
Miami, FL
**Taylor William Strickling, Esq.**
St. Thomas, U.S.V.I.
    *For Defendant*

### MEMORANDUM OPINION

**Lewis, Senior District Judge**

THIS MATTER comes before the Court on Defendant Ocwen USVI Services, LLC's ("Defendant") "Motion to Transfer and Notice of Pending, Related, or Similar Matter[s]" ("Motion to Transfer") (Dkt. No. 4); the Government of the United States Virgin Islands' ("Plaintiff") Opposition thereto (Dkt. No. 8); and Defendant's Reply Memorandum (Dkt. No. 11). In its Motion, Defendant seeks an Order transferring the instant action (referred to by the parties in the briefing as the "St. Croix case") to the District Court's Division of St. Thomas and St. John. (Dkt. No. 4 at 1). For the reasons discussed below, the Court will grant Defendant's Motion to Transfer.

## I.  BACKGROUND

On April 30, 2025, Plaintiff filed a Complaint against Defendant in the Superior Court of the Virgin Islands, Division of St. Croix.  (Dkt. No. 1-2).  On May 23, 2025, Defendant removed the action to the District Court of the Virgin Islands, pursuant to 48 U.S.C. § 1612 and 28 U.S.C. §§ 1331, 1367, 1441(a), and 1446.  (Dkt. No. 1).  This is the fifth case filed between these two parties.  (Dkt. No. 5 at 2).

Defendant was a recipient of an Economic Development Certificate ("Certificate") from the Economic Development Commission ("EDC") under the USVI Economic Development Program.  (Dkt. No. 1-2 at 3, 5).  Receipt of the Certificate bestowed upon Defendant "certain economic development benefits," including "tax exemptions and reductions."  *Id.* at 3, 16.  The Complaint alleges that Defendant made misrepresentations in its application for the Certificate; failed to abide by the requirements of the Certificate; and wrongfully received the benefit of significant tax exemptions between 2012 and the present due to its status as a Certificate holder. *Id.* at 3-11, 13-16.  Plaintiff seeks a declaratory judgment determining that: (1) Defendant breached certain requirements of the Certificate; (2) Defendant made "willful false or fraudulent statements or misrepresentations" to the EDC; (3) Defendant's Certificate is void, or alternatively revoked, as a result of the breached conditions and misrepresentations; (4) the tax benefits granted to Defendant are subject to clawback; and (5) Defendant must repay Plaintiff "the amount of the benefits received, plus interest and penalties."  *Id.* at 17, 19.  Plaintiff additionally seeks an award of the costs of suit and any "other and further relief" as the Court "deems just and equitable."  *Id.* at 17, 19.

Defendant filed the instant Motion seeking transfer of this case to the District Court's Division of St. Thomas and St. John.  (Dkt. No. 4 at 1).  Defendant identifies four related cases—three of which remain pending—previously filed in that Division of the Court:

(1) *Ocwen USVI Services, LLC v. the United States Virgin Islands* ("Ocwen I"), No. 22-cv-0066 (D.V.I. filed Nov. 5, 2022) (dismissed Jan. 13, 2023);

(2) *Ocwen USVI Services, LLC v. the United States Virgin Islands* ("Ocwen II"), No. 24-cv-0005 (D.V.I. filed Feb. 8, 2024);

(3) *Ocwen USVI Services, LLC v. Director, Virgin Islands Bureau of Internal Revenue* ("Ocwen III"), No. 24-cv-0014 (D.V.I. filed Mar. 7, 2024); and

(4) *The United States Virgin Islands v. Ocwen USVI Services, LLC* ("Ocwen IV"), No. 24-cv-0053 (D.V.I. filed Oct. 23, 2024)

(collectively, the "St. Thomas cases") (Dkt. No. 5 at 2).[1]

Plaintiff filed a "Notice of Related Action" in each of the pending St. Thomas cases. *See* Notice of Related Action ("Notice of Related Action I"), *Ocwen II* (D.V.I. May 16, 2025) (Dkt. No. 187); Notice of Related Action ("Notice of Related Action II"), *Ocwen III* (D.V.I. May 15, 2025) (Dkt. No. 101); and Notice of Related Action ("Notice of Related Action III"), *Ocwen IV* (D.V.I. May 16, 2025) (Dkt. No. 57). Each Notice of Related Action states that the cases are "related because they involve the same part[ies]," and "involve disputes concerning whether Ocwen is entitled to EDC benefits." Notice of Related Action I at 1; Notice of Related Action II at 1-2; Notice of Related Action III at 1.

## II. APPLICABLE LEGAL PRINCIPLES

Section 1404(b) provides in relevant part that "any action, suit or proceeding of a civil nature or any motion or hearing thereof, may be transferred, in the discretion of the court, from the division in which pending to any other division in the same district." 28 U.S.C. § 1404(b); *see also Sundell v. Cisco Sys. Inc.*, 111 F.3d 892, 892 (5th Cir. 1997) ("Under 28 U.S.C. § 1404(b), the district court has broad discretion in deciding whether to transfer a civil action from a division

---

[1] Separately, Plaintiff seeks remand of this action to the Superior Court of the Virgin Islands pursuant to 28 U.S.C. § 1447(c), stating that "[n]o allegations in the Complaint necessarily raise an actually disputed and substantial federal issue" because Plaintiff "has pleaded solely violations of U.S. Virgin Islands law." (Dkt. No. 12 at 1). In light of the three alleged related cases pending in the Division of St. Thomas and St. John, the Court deemed it appropriate for the Motion to Transfer to be resolved prior to resolution of the Motion to Remand in the instant case, in order to have all related matters addressed consistently together.

3

in which it is pending to any other division in the same district."); *Mendez v. Puerto Rican Int'l Companies, Inc.*, 2013 WL 3939639 at *2 (D.V.I. July 29, 2013) ("Under Section 1404(b), decisions regarding int[ra]district transfer of venue are 'in the discretion of the court.'").

Although discretionary, courts have generally adhered to the principle that "[a]t a minimum the Court must consider whether a[n intradistrict] transfer would be convenient to the parties and witnesses and in the interest of justice." *Desir v. Hovensa LLC*, 2012 WL 3191959 at *1 (D.V.I. Aug. 7, 2012); *see also Zanghi v. FreightCar Am., Inc.*, 38 F.Supp.3d 631, 643 (W.D. Pa. 2014) (same); *In re Bishop*, 2014 WL 1266363 at *3 (D. Del. Mar. 21, 2014) (same); *Mendez*, 2013 WL 3939639 at *2 ("The court's discretion [under Section 1404(b)] is guided by an analysis of factors that include the convenience of the parties and witnesses, as well as the interest of justice."). Courts may also consider any of the factors typically considered under Section 1404(a) for *interdistrict* transfers, but "under a less rigorous standard."[2] *Desir*, 2012 WL 3191959 at *1 ("When making an intradistrict transfer decision, an analysis of the factors applied to interdistrict transfers under Section 1404(a) guides the Court, but under a less rigorous standard."); *see also BFL Constr. Co. v. ORIX Real Est. Cap., LLC*, 2024 WL 3553111 at *2 (D. Ariz. July 26, 2024)

---

[2] Section 1404(a), which governs *interdistrict* transfers of venue, enumerates three factors to be considered: (1) the convenience of parties; (2) the convenience of witnesses, and (3) the interest of justice. 28 U.S.C. § 1404(a). However, courts "have not limited their consideration to the[se] three enumerated factors," and instead "consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interest[] of justice be better served by transfer to a different forum." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). These relevant factors are bifurcated into "private interests" and "public interests." *Id.* The six "private interests" are: (1) the plaintiff's forum preference as manifested in the original choice; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses; and (6) the location of books and records. *Id.* The six "public interests" are: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases. *Id.* at 879-80.

("Intradistrict transfers pursuant to 28 U.S.C. § 1404(b) are discretionary transfers subject to the same analysis as under 28 U.S.C. § 1404(a) but are judged by a less rigorous standard."); *3B Holdings, Inc. v. Revere Plastics Sys., LLC*, 2023 WL 6902426 at *1 (N.D. Ohio Oct. 19, 2023) (same). However, as "a § 1404(b) transfer" is designed to be "much less cumbersome than its inter-district counterpart," it is not a "requirement" that a district court "weigh in the balance a number of case-specific factors" as it must with a Section 1404(a) transfer. *White v. ABCO Eng'g Corp.*, 199 F.3d 140, 144 (3d Cir. 1999).[3] The moving party "bears the burden to establish that the transfer is appropriate and more convenient." *Ho v. Ruby S LLC*, 2016 WL 1162630 at *2 (D.N.J. Mar. 23, 2016) (citing *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995)).

### III.   DISCUSSION

#### A.   Interest of Justice

Defendant argues that the interest of justice favor transfer because "each of the cases, at least according to [Plaintiff] USVI, include the same issue." (Dkt. No. 5 at 8). Defendant further argues that where "an overlap between cases pending in different divisions involving the same parties and largely the same issues exists, transfer is warranted to avoid the unnecessary 'wastefulness of time, energy and money,' as well as the possibility of inconsistent results." *Id.* (citing *CIBC World Mkts., Inc. v. Deutsche Bank Sec., Inc.*, 309 F.Supp.2d 637, 651 (D.N.J. 2004)). Defendant also notes that the Supreme Court has stated—in a Section 1404(a) transfer case—that

---

[3] The Third Circuit has explained this less rigorous standard as owing to the fact that: "[a] case that is the subject of an intra-district (§ 1404(b)) transfer can be handled by the same lawyer(s) and will be governed by the same [local district] rules and procedures. A case that is the subject of a § 1404(a) [interdistrict] transfer is unloaded onto an entirely new system. The former is like moving a card table within a house from the living room to the kitchen; the latter is like collecting all the chips and going to the neighbor's house to play. The house rules, as any gamesperson knows, are usually different." *White*, 199 F.3d at 144; *cf. Combs v. Fla. Dep't of Corr.*, 461 F.Supp.3d 1203, 1206 (N.D. Fla. 2020) ("Because an intra-district transfer generally has milder ramifications than transfer to another district, courts are less rigorous in applying the section 1404(a) analysis." (citing *K.B. by T.B. v. Mich. Dep't of Health & Human Servs.*, 367 F.Supp.3d 647, 654 (E.D. Mich. 2019))).

5

"[t]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that [the transfer statute] was designed to prevent." *Cont'l Grain Co. v. FBL-585*, 364 U.S. 19, 26 (1960).

On the other hand, Plaintiff argues that transfer to the Division of St. Thomas and St. John would not "streamline litigation" in this case because "Ocwen has demonstrated a reluctance to engage in broad discovery on [the particular tax issue of] income sourcing in the St. Thomas cases" and "[t]he USVI's attempt to add a counterclaim in *Ocwen II* for 'clawback' based on improper income sourcing for 2013-2015 was rejected by the Magistrate Judge[.]" (Dkt. No. 8 at 9). Plaintiff additionally argues that "[t]he St. Croix case is outcome-determinative for the other cases," and a stay of the St. Thomas cases while this Court or the Superior Court resolves the instant action is the "'most efficient path forward' to avoid inconsistent judgments." *Id.*

Courts have observed in the Section 1404(a) context—and thus applicable as guidance in the Section 1404(b) context—that if there is "another jurisdiction where a related matter is pending," transferring a case to that jurisdiction "could make the trial easy, expeditious, or inexpensive," thus weighing in favor of transfer for the public's interest. *LG Elecs., Inc. v. First Int'l Computer, Inc.*, 138 F.Supp.2d 574, 592 (D.N.J. 2001) (collecting cases); *see also Vanda Pharms., Inc. v. Teva Pharms., Inc.*, 2023 WL 8890322 at *7 (D.N.J. Dec. 26, 2023) ("It is well-established that a pending related case in another district can be a compelling reason to transfer venue." (citation modified)); *MLI RX, LLC v. GlaxoSmithKline LLC*, 2023 WL 3739064 at *8 (E.D. Pa. May 30, 2023) ("This case proceeding in the District of New Jersey where a substantially similar action is pending serves the interest[] of justice by avoiding inconsistent results, promoting judicial efficiency, saving witnesses the time and expense of appearing at multiple trials, and avoiding duplicative litigation."); *Wu v. Stomber*, 2011 WL 6225142 at *1 (S.D.N.Y. Dec. 14, 2011) ("Because there is no disagreement that the actions are factually related . . . [i]t is in the

6

interest of judicial administration and conservation of resources for these actions to be in the same tribunal."). Additionally, where a particular judge has "already expended significant time, effort, and resources in becoming familiarized with these [related] cases' highly complex factual background," this factor weighs in favor of transfer to that judge. *Palomino Master Ltd. v. Credit Suisse Group AG*, 2025 WL 353810 at *3 (D.N.J. Jan. 31, 2025), *appeal denied, judgment aff'd*, 2025 WL 2621865 (D.N.J. Sept. 10, 2025); *see also Thompson v. Nat'l Football League*, 2014 WL 1646929 at *4-5 (W.D. Pa. Apr. 24, 2014) (transferring case because "the Minnesota District Court has a long history and familiarity with the facts, parties, and evidence which this Court does not currently possess" and "[i]t would be a waste of judicial resources to have these substantially similar cases heard in two different jurisdictions" as well as pose a "risk of inconsistent decisions"); *Theresa Ayling v. Travelers Prop. Cas. Corp.*, 1999 WL 994403 at *6 (E.D. Pa. Oct. 28, 1999) ("The interests of judicial efficiency require the transfer as the trial judge currently has a virtually identical case before him and is very familiar with the factual allegations at the center of this Complaint."); *Job Haines Home for the Aged v. Young*, 936 F.Supp. 223, 234 (D.N.J. 1996) ("It would be a gross waste of judicial resources to start litigating this case from scratch in the District of New Jersey. . . . Familiarity of a court with the subject matter of an action, and concern about consistent results, most certainly are [factors to be considered under Section 1404(a).]"); *Friedman v. JPMorgan Chase & Co.*, 2015 WL 1003887 at *4 (D.N.J. Mar. 2, 2015) (transferring the case to a district that had "developed an expertise and familiarity with the facts and issues of the case" in light of the "'significant' Madoff litigation [that] has taken place in New York").

Plaintiff's concession that "[t]he St. Croix case is outcome-determinative for the other cases" (Dkt. No. 8 at 9) constitutes a more than sufficient reason for this Court to find transfer to the Division of St. Thomas and St. John to be in the interest of justice. This is so because a transfer would promote judicial efficiency by resolving similar issues together by the court most familiar

7

with the facts and issues and therefore best situated to address the several cases between the two parties. A transfer would also avoid duplicative litigation and potentially inconsistent outcomes in the various related cases. *See Am. Tel. & Tel. Co. v. MCI Commc'ns Corp.*, 736 F.Supp.1294, 1307-08 (D.N.J. 1990); *LG Elecs., Inc.*, 138 F.Supp.2d at 592; *Vanda Pharms., Inc.*, 2023 WL 8890322 at *7.

This conclusion is fully supported by the underlying circumstances here. First, Plaintiff's three Notices of Related Action filed in the St. Thomas cases make the legal and factual overlap between these cases clear, identifying that the instant case:

> (1) "[D]irectly challenges the validity of Ocwen's EDC certificates and its compliance with program requirements based on income sourcing and misrepresentations, which is a central issue impacting the tax liability calculation and the denial of the EDC reduction disputed in th[e] District Court case" number 24-cv-0005 and number 24-cv-0053. Notice of Related Action I, *Ocwen II* (Dkt. No. 187 at 1-2); Notice of Related Action III, *Ocwen IV* (Dkt. No. 57 at 1-2).
> (2) "[W]ill determine whether Ocwen was entitled to claim the 90% credit in the first place," where the District Court case number 24-cv-14 "disputes a tax deficiency determined by the [Virgin Islands Bureau of Internal Revenue ("VIBIR")] for the taxable year ended November 17, 2019, in which the VIBIR disallowed Ocwen's claim to the 90% tax credit[.]" Notice of Related Action II, *Ocwen III* (Dkt. No. 101 at 1).

Thus, there can be no doubt that the St. Thomas cases and the St. Croix case have significant—if not identical—overlap, both factually and legally, and that joint resolution of the cases would promote judicial efficiency and avoid duplicative litigation and the risk of inconsistent outcomes.

Second, significant judicial resources from the St. Thomas and St. John Division of the Court have already been expended in addressing these intertwined issues. As one example, in the dockets of the St. Thomas cases, the Court previously issued a 20-page Memorandum Opinion and Order in *Ocwen II*, recounting the complex factual development of this case; analyzing a prior agreement between the two parties that resolved the claims in *Ocwen I*; and denying Plaintiff's attempt "to challenge Ocwen's claimed entitlement to a reduction of income tax liabilities under the EDC program, and to . . . [obtain a] refund to the Government payments already made" through

amended pleadings. Order, *Ocwen II*, 2024 WL 4674802 at *5, *11 (D.V.I. Nov. 5, 2024) ("[T]he timing of the instant motion given the Government's conscious decision not to conduct discovery during *Ocwen I* precludes any finding that the Government's failure to act sooner was simply an excusable oversight[.]"). This represents a significant investment of judicial resources into the underlying facts of the cases between the two parties and the overlapping claims in the concurrent cases. As another example, the Division of St. Thomas and St. John recently bifurcated the claims in *Ocwen II* for trial in a 57-page opinion based upon various discovery disputes. Memorandum Opinion and Order, *Ocwen II*, --- F.R.D. ----, 2025 WL 3089729 at *1 (D.V.I. Nov. 4, 2025). A bench trial is set to commence on May 18, 2026 in St. Thomas. Second Amended Trial Management Order, *Ocwen II* (D.V.I. Nov. 14, 2025) (Dkt. No. 237). For this Court to wade into the instant litigation would be to waste the "significant time, effort, and resources in becoming familiarized with the cases' highly complex factual background" that was "already expended" on the St. Thomas cases. *Palomino Master Ltd.*, 2025 WL 353810 at *3. To do so would also risk inconsistent rulings and re-litigation of issues previously decided. *See Hytera Commc'ns Corp. Ltd. v. Motorola Sols., Inc.*, 2018 WL 7108018 at *10 (D.N.J. Dec. 6, 2018) ("[T]he existence of a similar case supports transfer where the cases are similar enough that transfer would support judicial efficiency or reduce the risk of inconsistent results.").

Third, Plaintiff's contention that "Ocwen has demonstrated a reluctance to engage in broad discovery on [the particular tax issue of] income sourcing in the St. Thomas cases" and that the Division of St. Thomas and St. John has rejected "[t]he USVI's attempt to add a counterclaim in *Ocwen II* for 'clawback' based on improper income sourcing for 2013-2015" (Dkt. No. 8 at 9), raises the concern of the potential re-litigation of issues already decided, with the prospect for inconsistent results. Contrary to Plaintiff's assertions, a transfer of the case to the Division of St. Thomas and St. John would have the precise effect of "streamlin[ing] litigation" in this case. *Id*.

9

Thus, the interest of justice weigh very heavily in favor of transfer of the instant case to the District Court's Division of St. Thomas and St. John.

### B.     Convenience of the Parties and Witnesses

Defendant argues that the Division of St. Thomas and St. John "would be considerably more convenient," as "[b]ased on experience in the other matters, some witnesses from Ocwen would be coming from off-island" and "St. Thomas has more flexible flight options." (Dkt. No. 5 at 10). Defendant also argues that the individuals from the relevant USVI agencies that it has interacted with are "largely located in St. Thomas," and "both parties' counsel are located in St. Thomas." *Id.*

Plaintiff, in turn, argues that the USVI has offices in St. Croix for all the relevant agencies referenced by Defendant, and the fact that "[t]he St. Croix case was originally filed by the [USVI] in the Superior Court of the Virgin Islands, Division of St. Croix, indicat[es] that many key witnesses and documents related to the EDC application and tax audits would be located there[.]" (Dkt. No. 8 at 10). Plaintiff further argues that "the factual nexus of the St. Croix case lies firmly in St. Croix" because Defendant's operations were established in Frederiksted and the Certificate's "employment and economic impact" was "specifically tied to St. Croix." *Id.* Plaintiff thus maintains that the convenience of the parties and the witnesses favors St. Croix. *Id.*

As a preliminary matter, the Court does not credit Plaintiff's argument that the convenience of the parties and witnesses lies in St. Croix when four prior related cases between the same parties—three of which are pending—were filed by the parties in the Division of St. Thomas and St. John. Plaintiff's argument raises the obvious question as to why it would have chosen to either file or continue to litigate four admittedly related cases in the Division of St. Thomas and St. John when—as Plaintiff now argues—"many key witnesses and documents related to the EDC application and tax audits" lie in St. Croix. *Id*. The fact that Plaintiff has been litigating the related

10

cases in the Division of St. Thomas and St. John for over three years—without ever seeking to transfer those cases to St. Croix—simply underscores the importance of the query as to why it has suddenly become necessary in the interest of justice and for the convenience of the parties and the witnesses to litigate this related case on St. Croix. In addition, neither the filing of the instant case on St. Croix nor the alleged factual nexus of the case to St. Croix overcomes the strength of the parties' choice of St. Thomas for litigation of the four related cases; the length of time that these cases have been litigated in St. Thomas; the amount of work that has been done on those cases in St. Thomas; and the absence of any attempt at any time to transfer the related cases to St. Croix.[4] Given that the related cases have been proceeding on St. Thomas for over three years without any apparent concern by Plaintiff regarding the conduct of the litigation on St. Thomas rather then on St. Croix, it appears that the Court has no reason to accept the assertion that litigation on St. Thomas has now become inconvenient to the parties and the witnesses, and every reason to accept Defendant's assertion that the individuals from the relevant USVI agencies that it has interacted with are "largely located in St. Thomas," and that "[b]ased on [its] experience" in the St. Thomas matters, witnesses "would be coming from off-island" and "St. Thomas has more flexible flight options." (Dkt. No. 5 at 10).

Thus, the Court finds that, under the circumstances here, Defendant has carried its burden of demonstrating that the convenience of the parties and witnesses weighs in favor of transferring this case to the District Court's Division of St. Thomas and St. John.

---

[4] The Court notes that Counsel for Plaintiff filed a "Notice of Counsel's Unavailability" in *Ocwen II* noting counsel's unavailability from December 1, 2025, stating that counsel's "full return to duty and availability for in-person proceedings remains uncertain," and requesting both that the scheduling of the trial in *Ocwen II* "be coordinated with the other Ocwen cases currently pending" and that a status conference be scheduled to "address competing schedules and trials." Notice of Counsel's Unavailability, *Ocwen II* (D.V.I. Sept. 22. 2025) (Dkt. No. 223 at 1). Requests of this nature by counsel for coordination of schedules across related cases between the same parties are best handled when all such cases are being adjudicated before the same court, as it serves both the convenience of the parties and promotes judicial efficiency.

## IV.   CONCLUSION

The Court finds that Defendant has met its burden to establish that "transfer is appropriate and more convenient."  *Ho*, 2016 WL 1162630 at *2.  Transfer of the instant litigation to the District Court's Division of St. Thomas and St. John, so that it may be decided consistently and efficiently with the three pending related St. Thomas cases is both in in the interest of justice and convenient to the parties and the witnesses.  *Desir*, 2012 WL 3191959 at *1.  In view of the foregoing, the Court will grant Defendant's Motion to Transfer.

An appropriate Order accompanies this Memorandum Opinion.

Dated: January 28, 2026

_____/s/_____
WILMA A. LEWIS
Senior District Judge